7661

### ZEIGLER v. SHULER.

FRAUD.—A DEED made by one of weak mind, suffering from a permanent injury, conveying to his brother, at his instance, a valuable tract of land, for largely voluntary consideration, set aside.

Before GARY, J., Orangeburg, October, 1909. Affirmed.

Action by Lawrence M. Zeigler against D. Weston Shuler and Govan A. Shuler. The circuit decree is:

"This is an action, as appears from the complaint, for partition of certain real estate in the County of Orangeburg, which the plaintiff alleges is owned by him and the defendant, D. Weston Shuler, as tenants in common in equal proportions.

"The defendant, D. Weston Shuler, answers the complaint denying the allegations thereof, and alleges that the

plaintiff has no interest in the said real estate as a tenant in common or otherwise, but that the said real estate was owned by himself and his brother, Govan A. Shuler. He further alleges that his brother, the said Govan A. Shuler, was confined in the Hospital for the Insane of this State, he having been declared insane and incapable of managing his affairs.

"The case was referred to Robert E. Copes, Esq., as special referee, to take the testimony on the issues raised by the pleadings herein and report his conclusions of law and fact thereon.

"The special referee states in his report, that at a reference held before him, it appeared that Govan A. Shuler, who made the deed under which the plaintiff claimed his interest in the said real estate, had twice prior to the execution of the said deed been committed to the State Hospital for the Insane, having been adjudged a lunatic; and that after the execution of the said deed he had been again committed to the said hospital for the insane, where he was still confined, and that he was a necessary party to the final determination of the issues raised in the pleadings, and he thereupon made an order directing that the said Govan A. Shuler be made a party defendant to the action, and that the summons and complaint be amended accordingly. This was done. After Govan A. Shuler had been served with the amended copy of the summons and complaint, a guardian *ad litem* was duly appointed and directed to appear and defend the action on his behalf. The guardian *ad litem* interposed a formal answer to the complaint. The case came on to be heard before me at the October term, 1909, of the Court of Common Pleas for Orangeburg county, upon the pleadings, evidence and exceptions to the report of the special referee on behalf of the defendants.

"The basis of plaintiff's claim to the said real estate, and his right to the partition thereof, is the deed executed to him by his half brother, the defendant, Govan A. Shuler. The special referee found, among other things, 'That, while

it has been shown by the evidence that Govan A. Shuler was of unsound or weak mind, and that twice prior to the execution of the said deed he had been committed to the State Hospital for the Insane, having been adjudged a lunatic in ex parte proceedings, neither of which had ever been traversed, and that shortly after the execution of said deed he was again committed to the said hospital, having been adjudged a lunatic in ex parte proceedings, which had never been gainsaid or traversed, and is now an inmate of that hospital; still the evidence also shows that, at the times he was not confined in the hospital, his unsound or weak mind did not render him incapable of transacting business and of knowing the nature and consequence of his acts.' The testimony abundantly sustains the special referee in his finding that the defendant, Govan A. Shuler, was found of unsound and weak mind, and that twice prior to the execution of said deed he had been committed to the State Hospital for the Insane, having been adjudged a lunatic, as he states, and that very soon after the execution of said deed he was again committed to the hospital for the insane, having been adjudged a lunatic, and was then an inmate in that hospital.

"The special referee further held that at the moment Govan A. Shuler executed the said deed to Lawrence M. Zeigler, which was recorded in the office of the clerk of Court for Orangeburg county aforesaid, on April 4, 1903, in Book 43, at page 64, whereby he conveyed his interest in the real estate, which is described in the complaint, to the plaintiff, he was in the enjoyment of a lucid interval, and that although the deed was largely voluntary, yet he was under no undue influence, and no fraud was practiced on him, and that when he made the deed he put into effect what he had predetermined during former lucid intervals, and concluded that the said deed was a valid conveyance of the interest of Govan A. Shuler in the said real estate to

the said Lawrence M. Zeigler, and that the same should not be set aside.

"I am not prepared to assent to the finding of the special referee, that the defendant, Govan A. Shuler, was in the enjoyment of a lucid interval when he executed the deed, in the face of the testimony of Dr. A. S. Hydrick, corroborated by other testimony, that he could not have lucid intervals, as his injury was a permanent one, and he was satisfied, from his mental condition, that he was absolutely incapable of managing his business.

"But, aside from that, after a careful review of the testimony, I am satisfied that the deed cannot be sustained. The special referee seems to have entirely overlooked the fact that this is a case in which the court of equity is asked to set aside a deed of conveyance between persons sustaining to each other the confidential relations of half brothers, the one being extremely weak mentally, if not entirely *non compos mentis,* and in failing to apply the rules governing such cases.

"The defendant, Govan A. Shuler, at the time of the execution of the deed, and long prior thereto, was, to say the least, as shown by all the testimony, a person of an extremely weak mind, and incapable, in my opinion, of comprehending the nature and consequences of his act. The deed was almost wholly voluntary. The plaintiff testified that the tract of land was worth from six to seven thousand dollars. He stated that he paid him no money on the day the deed was executed, but that he, the plaintiff, bought him some clothing about six or eight months before the execution of the deed, and otherwise the deed was wholly voluntary. Mr. Henry Zeigler, cousin of the plaintiff, testified that he went to an attorney and had the deed prepared, and afterwards he, with the plaintiff, went to Branchville, where the deed was executed. Under these facts, even if the defendant, Govan A. Shuler, was a person of strong mind, the inadequacy of price was so gross as to shock the con-

science and furnish satisfactory evidence of fraud sufficient for cancelling it. But here we have a very feeble-minded person on the one side, without any competent or independent adviser, and on the other a half brother, who, the deed states, has been his most staunch and constant friend, procuring from his feeble-minded half brother an absolute conveyance of all his property for the nominal consideration of five dollars, which was not paid, and a few clothing, which he had given him six or eight months prior to the execution of the deed.

"While a court of equity is not intended to protect those who make improvident or even reckless contracts, it will always interpose to shield a helpless and weak-minded person from his half brother, such as Govan A. Shuler is shown to be, who would take his all and pauperize him for practically nothing.

"The Court, in the case of *Willie* v. *Willie,* 57 S. C., 413, 35 S. E., 804, quoting from *Allore* v. *Jewell,* 94 U. S., 506, says: 'It is not necessary in order to secure the aid of equity to prove that the deceased grantor was at the time insane, or in such a state of mental imbecility as to render her incapable of executing a valid deed; it is sufficient to show that, from her sickness and infirmity, she was at the time in a condition of great mental weakness, and there was gross inadequacy of consideration for the conveyance. From these circumstances imposition or undue influence will be inferred. In the case of *Harding* v. *Wheaton,* reported in 2d Mason, 378, a conveyance executed by one to his son-in-law for a ' nominal consideration, and upon verbal arrangement that it should be considered as a trust for the maintenance of the grantor, and after his death for the benefit of his heirs, was after his death set aside, except as security for actual advances and charges upon application of his heirs, on the ground that it was obtained from him when his mind was enfeebled by age and other causes. "Extreme weakness," said Mr. Justice Story, in deciding

the case, will raise an almost necessary presumption of imposition, even when it stops. short of legal incapacity; and, though a contract, in the ordinary course of things reasonably made with such a person, might be permitted to stand, yet, if it should appear to be of such a nature that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it. The case subsequently came before this Court, and in deciding it Mr. Chief Justice Marshall, speaking of this, and it would seem of other deeds executed by . the deceased, said: "If these deeds were obtained by the exercise of undue influence over a man whose mind has ceased to be a safe guide of his actions, it is against conscience for him who has obtained them to derive any advantage from them. It is the peculiar province of a court of conscience to set them aside. That a court of equity will interpose in such a case is among the best settled principles. *Harding* v. *Handy,* 11 Wheat, 125. The same doctrine is announced in adjudged cases almost without number; and it may be stated, as settled law, that whenever there is great-weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, the court of equity will, upon proper and reasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside." '

"The Court, in the case of *Banker* v. *Hendricks,* 24 S. C., 1, and *Gaston* v. *Bennett,* 30 S. C., 473, 9 S. E., 515, approved the principles as stated in 1 Story Eq. Jur., sec. 238, that 'the acts and contracts of persons who are of weak understandings, and who are thereby liable to imposition, will be held void in courts of equity, if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he has

been imposed upon, circumvented or overcome by cunning artifice or undue influence.'

· "See also case of *Way* v. *Insurance Co.*, 61 S. C., 501, 39 S. E., 742. ·

"Mr. Pomeroy says (Pom. Eq., vol. II, sec. 957) : 'This principle is applied with great emphasis and vigor to gifts, whether they are simple bounties or purport to be the effects of liberality based upon antecedent favors or obligations.'

"The special referee also finds that there was no undue influence and no. fraud was practiced on the defendant, Govan A. Shuler. This finding is based upon the misconception of the rule applicable to a case like this, which presumes undue influence from the relationship of the parties, and the absence of an adequate consideration.

"When the testimony is viewed in the light of these well settled principles of law the deed cannot be sustained."

The plaintiff appeals.

*Messrs. P. T. Hildebrand, Thos. F. Brantley* and *M. E. Zeigler,* for appellant, cite: *Contracts of weak-minded persons:* 16 S. C., 334; 65 S. C., 558; 24 S. C., 1; 30 S. C., 473. *Mental capacity:* 30 Ency., 574. *Opinion of witness to deed:* Rogers on Ex. Ev., 156; 18 S. C., 509; 24 S. C., 295; 33 S. C., 116. *Opinion of doctors not final:* 2 L. R. A., 668; 13 Ala., 202; Lawson on Ex. Ev., 153. *Opinion evidence:* 2 L. R. A., 669; 61 Pa., 404; 1 Cent. R., 143; 17 N. Y., 340; 9 N. Y., 371; 45 Ill., 485; 109 Ill., 175; 115 Ill., 623; Law on Ex. Ev., 476; 12 Ency., 492, 489; Rogers on Ex. Ev., 164; 1 Whar. & Stille Med. Jur., 272. *Adjudication of lunacy does not make contracts void:* 16 Ency., 607, 606, 611; 30 S. C., 377; 20 Abb. N. Cas. (N. Y.), 280; 82 Va., 863; 22 Cyc., 1134; 2 L. R. A., 669; 8 Rich. Eq., 286; 36 Ala., 514; 52 Me., 304. *Proof of sanity:* 4 McC., 183; 71 S. C., 331; 16 S. C., 334;; 65 S. C.. 558.

*Messrs. Raysor & Summers, Wolfe & Berry* and *Jas. F. Izlar,* contra. *Messrs. Raysor & Summers* and *Wolfe & Berry* cite: *Insanity having been shown, it is presumed to continue:* 4 S. E., 580; 3 Star. on Ev., 1703.; 1 Green. Ev., 842. *Deed void:* 2 White and Tudor Lead. Eq. Cas., 622; 9 Ency., 12, 123; 11 At. R., 727; 66 L. R. A., 261; 55 W. Va., 490; 30 Fed. R., 11; 24 S. C., 1; 30 S. C., 473; 2 Ency., 194; 1 Story Eq. Jur., sec. 238; 1 McC. Eq., 383; 57 S. C., 413; 2 Pom. Eq. Jur., sec. 957; 11 Wheat, 125. *Inadequacy of price:* Adams Eq., 184; 1 Story Eq., 329a; 2 Ency., 204; 4 DeS., 651; 2 Strob. Eq., 267; 4 S. E., 575. *Fraud may be presumed from circumstances:* 9 Grat., 330; 2 Mas., 378; 2 Minor Inst., 597; 61 S. C., 506; 6 Ves., 266; 94 U. S., 506.

August 25, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The judgment of this Court is that the judgment of the Circuit Court be affirmed for the reasons therein stated.